IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| REGINALD KENNEDY, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | Case No. 5:23-cv-00125-MTT-CHW |
| | : | |
| LIEUTENANT THOMPSON, *et al.*, | : | Proceedings Under 42 U.S.C. § 1983 |
| | : | Before the U.S. Magistrate Judge |
| **Defendants.** | : | |
| | : | |

## REPORT AND RECOMMENDATION

Plaintiff Reginald Kennedy, a state inmate, filed a *pro se* civil rights complaint seeking relief under 42 U.S.C. § 1983 regarding an assault by a fellow inmate at Dooly State Prison. (Doc. 1). Defendant Lieutenant Glenn Thompson, the remaining defendant, now moves for summary judgment. (Doc. 30). Plaintiff did not respond to the motion. As discussed below, the undisputed facts show that Defendant was not deliberately indifferent to a substantial risk of serious harm. Therefore, it is **RECOMMENDED** that Defendant's motion for summary judgment (Doc. 30) be **GRANTED**.

## BACKGROUND

Plaintiff brought this action on March 27, 2023, alleging claims for deliberate indifference to safety against multiple defendants. (Doc. 1). Following screening of Plaintiff's amended complaint (Doc. 5) under 28 U.S.C. § 1915A, the Court allowed Plaintiff to proceed on his deliberate indifference to safety claim against Defendant Thompson. (Doc. 6). In his deliberate indifference claim, Plaintiff alleges that Defendant knew about a potentially dangerous situation and failed to intervene when Plaintiff was attacked by another inmate. (Doc. 5). Defendant filed

1

an answer which raised the defenses of failure to state a claim, sovereign immunity, and qualified immunity, among others. (Doc. 16). The parties then engaged in a period of discovery, including the deposition of Plaintiff. *See* (Doc. 30-3). Defendant has now filed a motion for summary judgment. (Doc. 30).

## SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment bears the burden of informing the Court of the basis for its motion, and of citing "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that support summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In resolving motions for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

Although Plaintiff failed to respond to Defendant's motion for summary judgment, summary judgment is not properly awarded by default. S*ee Trs. of Cent. Pension Fund of Int'l Union of Operating Eng'rs and Participating Emp'rs v. Wolf Crane Serv., Inc.*, 374 F.3d 1035, 1039–40 (11th Cir. 2004). By failing to respond to Defendant's motion, however, Plaintiff has failed to rebut Defendant's statements of undisputed material facts, triggering consequences under both the Federal Rules of Civil Procedure and this Court's Local Rules.

Federal Rule of Civil Procedure 56(e)(2) provides that if a party "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2). This Court's Local Rule 56

similarly provides: "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." MDGA Local Rule 56. Nevertheless, the Court has reviewed the record of evidence, including Plaintiff's deposition testimony, to confirm the facts set forth in Defendant's statement.

Finally, Federal Rule of Civil Procedure 56(e)(3) provides that the Court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to" summary judgment. FED. R. CIV. P. 56(e)(3); *e.g.*, *Urdaneta v. Wells Fargo Bank, N.A.*, 734 F. App'x 701, 704 (11th Cir. 2018). Accordingly, because Defendant properly supported his factual assertions with specific citations to the record, and because Plaintiff failed to respond, Defendant's facts may be accepted by the Court as undisputed.

## RELEVANT FACTS

Plaintiff's deliberate indifference to safety claim stems from a September 7, 2021, inmate assault. (Docs. 1, 5, 6). Many of the facts in this case are undisputed. Plaintiff was incarcerated at Dooly State Prison (DSP) from February 2020 until December 2021. (Doc. 30-4, ¶ 8).[1] Defendant was previously a Lieutenant at DSP and served in that capacity from July 2021 to October 2021. (*Id.*, ¶ 2). The morning of the incident, around 6:30 a.m., Plaintiff was eating breakfast in the dining hall with approximately fifty to sixty other inmates. (Doc. 30-3, p. 33–34).[2] Plaintiff witnessed

---

[1] In his declaration, Defendant Thompson states that he possesses a copy of Plaintiff's movement history which lists the dates of incarceration and states that he has attached a copy of the movement history to the declaration. (Doc. 30-4, ¶ 8). This attachment appears to be missing from the record.

[2] The page numbers on Document 30-3, Plaintiff's deposition, differ from the page numbers in the Court's file. This Recommendation uses the page numbers from the actual deposition.

inmate Joshua Preston attack another inmate. (*Id.*, p. 35–36). Defendant, who Plaintiff testified was the only officer on duty in the dining hall at that time, locked down the dining hall and escorted the victim to the medical unit. (*Id.*, p. 34, 38–39). Defendant returned two to three minutes later and opened the doors so the inmates could leave the dining hall. (*Id.*, p. 39–40). Plaintiff did not know that inmate Preston was armed with a knife during the initial attack. (*Id.*, p. 41). Nor did Plaintiff inform Defendant that inmate Preston possessed a knife. (*Id.*, p. 41–42).

After Defendant returned to the dining hall and lifted the lockdown, Plaintiff returned to his cell in E Dormitory to wait on "pill call." (*Id.*, p. 42). Plaintiff left his cell for pill call at approximately 7:30 a.m. (*Id.*, p. 43). Pill call is in the medical ward, a separate building from E dormitory, and Plaintiff had to travel through a locked gate controlled by guards. (*Id.*, p. 42–43). Defendant was monitoring the dining hall and was now operating the gate that inmates pass through for pill call. (*Id.*, p. 47). Plaintiff arrived at pill call and was informed that he would need to provide his ID before he would be given any medication. (*Id.*, p. 46). Plaintiff went back to his cell in an attempt to retrieve his ID and ultimately arrived back at the gate to head towards the medical ward. (*Id.*, p. 46). Defendant was still monitoring the dining hall, so Plaintiff motioned to Defendant to open the gate. (*Id.*, p. 47-50). Plaintiff was waiting along with inmate Preston and a few other inmates for the gate to open. (*Id.*, p. 50). Plaintiff and inmate Preston began talking, and during their conversation, inmate Preston stated that "it's about to get digital." (*Id.*, p. 50). Inmate Preston then stabbed Plaintiff in the head and walked away.[3] (*Id.*, p. 51-52).

---

[3] In his deposition, Plaintiff testified that at this point he was still unaware that Defendant was carrying a knife and thought only that Defendant had hit him in the head. (*Id.*, p. 51). Plaintiff did not discover that Defendant had a knife until the next attack. (*Id.*, p. 51). Only in hindsight did Plaintiff testify that Defendant stabbed him in the head with the knife rather than punch him during the initial incident. The Court must construe the evidence in the light most favorable to Plaintiff and accept as fact that Defendant was armed with a knife in the initial attack and stabbed, rather than punched, Plaintiff in the head.

Plaintiff did not notice that attack until he began to bleed heavily from the head. (*Id.*, p. 52). He started banging on the window by the dining hall the to get Defendant's attention, and then, according to Plaintiff, Defendant looked at him and walked away.[4] (*Id.*, p. 52). Following this, Plaintiff began to walk around trying to find an officer and noticed that he was walking behind inmate Preston. (*Id.*, p. 53). Inmate Preston saw that Plaintiff was behind him, and the two began to fight. (*Id.*, p. 53–55). This fight was the first time Plaintiff noticed that Preston possessed a knife. (*Id.*, p. 56–57). Two officers saw this fight shortly thereafter and intervened, causing Preston to flee. (*Id.*, p. 55). Shortly thereafter, Plaintiff was being escorted to the medical ward by the officers when inmate Preston noticed Plaintiff, and the two exchanged words. (*Id.*, p. 60–62). Another officer intervened before the confrontation could escalate, and Plaintiff continued to the medical ward where he was treated. (*Id.*, p. 60–63).

Prior to the incident, Plaintiff had never had any negative interactions with inmate Preston. (*Id.*, p. 43). Nor had he previously identified inmate Preston as a threat. (*Id.*, p. 43–44). Plaintiff testified that the previous night he had cooked for inmate Preston and that the two were "family." (*Id.*, p. 43–45, 51). Defendant testifies in his affidavit that he was not aware of any specific threats against Plaintiff prior to the incident, and that Plaintiff did not inform him of any threats or that he feared an assault from inmate Preston. (Doc. 30-4. ¶ 4, 5).

**ANALYSIS**

Plaintiff claims that Defendant failed to intervene during an inmate attack. As discussed below, the undisputed facts, construed in the light most favorable to Plaintiff, show that Defendant

---

[4] Defendant testified that he was not present and did not witness the assault. (Doc. 30-4, ¶ 6). Plaintiff testified that Defendant was standing in front of the window and that he is unsure how anyone standing there wouldn't see an altercation. (Doc. 30-3, p. 59). The record is construed in the light most favorable to Plaintiff.

did not act with deliberate indifference to Plaintiff's safety before, during, or after the attack. Defendant is therefore entitled to summary judgment.

### 1. Defendant was not deliberately indifferent to a substantial risk of serious harm.

The Eighth Amendment prohibits "a prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate" because "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 828, 833 (1994) (citations omitted). Not "every injury suffered by one inmate at the hands of another" translates into constitutional liability, however. *Id.* at 834. To establish a deliberate indifference claim, Plaintiff "must allege facts sufficient to show (1) a substantial risk of serious harm; (2) [Defendant's] deliberate indifference to that risk; and (3) causation." *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal quotations omitted). Plaintiff must show that Defendant "was subjectively aware that [Plaintiff] was at risk of serious harm" and that Defendant "acted 'with subjective recklessness as used in the criminal law'" in disregarding that risk. *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (quoting *Farmer*, 511 U.S. at 839). Finally, the Defendant must actually have been in a position to intervene for liability to attach. *Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir. 2010).

### a. *Substantial Risk of Serious Harm*

Turning first to whether Plaintiff faced a substantial risk of serious harm, this element "is assessed objectively and requires [Plaintiff] to show 'conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety.'" *Marbury v. Warden*. 936 F.3d 1227, 1233 (quoting *Lane*, 835 F.3d at 1307). While "an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm[,] occasional, isolated attacks by one

prisoner on another may not" arise to a substantial risk. *Lane*, 835 F.3d at 1307 (quoting *Harrison v. Culliver*, 746 F.3d 1288, 1299 (11th Cir. 2014)). Plaintiff does not provide any evidence to suggest that there was a substantial risk of serious harm to Plaintiff by inmate Preston prior to the attack. Rather, Plaintiff testified that he and inmate Preston were "family" and had "no problem." (Doc. 30-3, p. 43–45, 51).

While an inmate's past prison violence, such as a violent assault on an inmate, may support a section 1983 claim, there is no evidence of such a history here. *See Caldwell v. Warden, F.C.I. Talladega*, 748 F.3d 1090, 1100 (11th Cir. 2014) (citing *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983)). The only evidence indicating any risk of harm is inmate Preston's first attack on inmate "Sasquatch" in the dining hall shortly before the incident in this case. (*Id.*, p. 33–37). This alone does not meet the substantial risk of serious harm standard required. Plaintiff testified that he originally thought that inmate Preston had merely punched, rather than stabbed, inmate "Sasquatch." (*Id.*, p. 37). Plaintiff was not aware that inmate Preston possessed a knife until later, after Plaintiff was stabbed. (*Id.*, p. 56–57). To find that an isolated attack, originally thought to be a punch resulting in an injured eardrum, arises to a substantial risk of serious harm to Plaintiff would constitute "hindsight bias." (*Id.*, p.37); *Brooks v. Warden*, 800 F.3d 1295, 1302–03 (11th Cir. 2015) (citing *Purcell ex rel. Est. of Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1320 (11th Cir. 2005) (explaining that a court "must not allow the advantage of hindsight to determine whether" an Eight Amendment violation occurred)).

b.  *Defendant Was Unaware of Risk*.

The second element of a deliberate indifference claim requires evidence that Defendant had subjective knowledge of a risk of serious harm and that Defendant "acted with subjective recklessness as used in the criminal law" in disregarding that risk. *Wade*, 106 F.4th at 1255.

7

(internal quotations omitted). Subjective knowledge requires that Defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (quoting *Farmer*, 511 U.S. at 837). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. The trier of fact may, therefore, "conclude that a [defendant] knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

Plaintiff has not shown that Defendant was subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, nor has he shown that Defendant drew the inference. The version of the facts most favorable to the non-movant shows that inmate Preston attacked another inmate in the dining hall with a knife. (Doc. 30-3, p. 37, 56–57). The evidence does not show that Plaintiff or Defendant was aware of the knife at that time, however. (*Id.*, p. 41–42, 56–57); (Doc. 30-4, ¶ 4, 5). The fact that Preston attacked another inmate with a knife does not by itself give rise to constitutional liability, because that fact was not known to Plaintiff or Defendant until later. The "known risk of injury must be a strong likelihood, rather than a mere possibility before [Defendant's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citation and internal quotation marks omitted); *e.g. Nelson v. Tompkins*, 89 F.4th 1289, 1296 (11th Cir. 2024), *appeal docketed*, No. 23-1374 (U.S. July 02, 2024).

Before the attack, Plaintiff and inmate Preston had not had any fights or disputes. (Doc. 30-3, p. 43–44). Plaintiff himself testified that he had no problems with inmate Preston and that the two were on good terms. (*Id.*, p. 44–45). Thus, Plaintiff's allegations that Defendant had

subjective knowledge of a risk of serious harm may amount to, at most, negligence, but a defendant's negligent failure to protect a plaintiff from a risk of harm will not impose § 1983 liability. *Brown*, 894 F.2d at 1537 (citing *Davidson v. Cannon*, 474 U.S. 344, 347–48 (1986)). The evidence shows that Defendant was unaware of a "particularized threat or fear" and so he was unable to draw an inference "that a substantial risk of serious harm exists." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (citation omitted). Plaintiff has not established that he told Defendant of any particularized fears he had regarding inmate Preston prior to the attack and admits he did not have any problems with inmate Preston. (Doc. 30-3, p. 43–44). Thus, Plaintiff has failed to present evidence to "support a reasonable jury's finding that [Defendant] harbored a subjective awareness that [Plaintiff] was in serious danger." *Marbury*, 936 F.3d at 1238.

    c.  *Defendant Was Not in a Position to Intervene.*

       For § 1983 liability to attach, Defendant must actually have been in a position to intervene. *Terry*, 376 F. App'x at 896. Plaintiff has the burden of demonstrating Defendant "was in a position to intervene but failed to do so." *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1330–31 (11th Cir. 2008)). In Plaintiff's own words, Defendant was in the dining hall, which was separated by a "big pane window" from the area where Plaintiff was attacked. (Doc. 30-3, p. 50). Defendant notified Plaintiff that it would be a moment before he could exit the dining hall to open the gate for Plaintiff to pass through to the medical unit. (*Id.*, p. 50). While Plaintiff was waiting, he began talking with inmate Preston and others. (*Id.*, p. 51). Inmate Preston then stabbed Plaintiff once in the head and walked off. (*Id.*, p. 51). Plaintiff started banging on the window to get Defendant's attention. (*Id.*, p. 52).

       Plaintiff testified that there was blood everywhere and that Defendant noticed Plaintiff but walked away through another door. (*Id.*, p. 52). Defendant stated that he was not present during

the assault and did not witness the assault, however. (Doc. 30-4, ¶ 6). Although there is a factual dispute as to whether Defendant witnessed the attack, and the evidence is viewed in the light most favorable to Plaintiff, the dispute is not an issue of material fact. "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07-21516-CIV, 2008 WL 2914977, * 2 (S.D.Fla. July 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *see Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (explaining that a genuine issue of material fact exists if a reasonable factfinder could return a verdict for the nonmoving party). "A fact is not material if a dispute over that fact will not affect the outcome of the case . . . ." *Cont'l Cas. Co. v. Winder Lab'ys, LLC*, 535 F. Supp. 3d 1321, 1324 (N.D.Ga. 2021) (citing *Liberty Lobby*, 477 U.S. at 248).

Even if Plaintiff's assertion that Defendant was present and witnessed the outcome is true, it does not establish that Defendant committed a constitutional violation. Defendant was on the other side of a window when Plaintiff was attacked. (Doc. 30-3, p. 50). The attack happened quickly, and at first Plaintiff himself "didn't even notice it." (Doc. 30-3, p. 51). At this point, Plaintiff still had not seen the knife. (Doc. 30-3, p. 51–52, 56–57). Plaintiff has not established that Defendant had a realistic chance to intervene in the attack. Further, Plaintiff has "presented no evidence from which a reasonable jury could find that [Defendant] could have anticipated and then stopped [the attack]." *Hadley*, 526 F.3d at 1331. Plaintiff also failed to provide any evidence that Defendant witnessed or could have intervened in Plaintiff's second altercation with inmate Preston, during which no injury occurred. Thus, the undisputed evidence shows that Defendant was not subjectively aware of a substantial risk of serious harm and committed no constitutional violation in not intervening during the incident.

## 2. Defendant is entitled to qualified immunity.

When considering whether summary judgment is appropriate based on qualified immunity, the Court "[draws] all inferences and [views] all of the evidence in a light most favorable to the nonmoving party." *Jones v. Michael*, 656 F. App'x 923, 925 (11th Cir. 2016) (internal quotations omitted). "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Marbury*, 936 F.3d at 1232 (internal quotations omitted). Defendant "cannot obtain qualified immunity unless he establishes that he was acting within his discretionary authority." *Underwood v. City of Bessemer*, 11 F.4th 1317, 1328 (11th Cir. 2021) (citing *Morton v. Kirkwood*, 707 F.3d 1276, 1280 (11th Cir. 2013)).

The internal security of prisons is "normally left to the discretion of prison administrators." *Rhodes v. Chapman*, 452 U.S. 337, 349 n.14 (1981). Plaintiff fails to dispute Defendant's assertion that Defendant was acting within the scope of his discretionary authority. Because it is undisputed that the decisions regarding prison administration fall within Defendant's discretionary authority and Plaintiff's lack of opposition, the Court finds Defendant acted within the scope of his discretionary authority. *See, e.g., Goebert v. Lee Cnty.*, 510 F.3d 1312, 1329 (11th Cir. 2007).

Once action under discretionary authority has been established, "the burden shifts to the plaintiff, who must show [Defendant] is not entitled to qualified immunity." *Underwood*, 11 F.4th at 1328 (citation omitted). "At [this] stage, [the Court asks] two questions: (1) 'whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right,' and (2) if so, 'whether the right at issue was 'clearly established' at the time of [Defendant's] alleged misconduct.'" *Id.* at 1328 (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Both must be

present for Plaintiff to prevail. *Id.* Thus, Plaintiff must show a violation of a constitutional right to survive summary judgment.

As discussed above, Plaintiff has not met his burden to show that Defendant violated his constitutional rights. Because Plaintiff failed to establish a violation of a constitutional right, there is no need to examine the second prong of the qualified immunity analysis. Defendant is entitled to qualified immunity as a matter of law.

### CONCLUSION

Because the undisputed facts do not support Plaintiff's deliberate indifference claims, it is **RECOMMENDED** that Defendant's motion for summary judgment (Doc. 30) be **GRANTED**.

### OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. Any objection is limited in length to **TWENTY (20) PAGES**. *See* MDGA Local Rule 7.1. The District Judge shall make a *de novo* determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for

failing to object. In the absence of a proper objection, however, the court may review on appeal

for plain error if necessary in the interests of justice."

      **SO RECOMMENDED**, this 27th day of September, 2024.

<div style="margin-left: 40%;">

s/ Charles H. Weigle\
Charles H. Weigle\
United States Magistrate Judge

</div>